## MARTIN and others *vs.* BALLOU.

A testator, by his will, devised and directed as follows: "First, I give and devise to my sons all my real estate, together with the stock, and farming utensils, &c.   The land to be divided as hereafter mentioned."   After giving various legacies, the testator proceeded as follows: "I give and devise to my son R. all that farm whereon he now lives, &c. by his paying to the other heirs the sum of ——.   I give and devise to my son D. the farm whereon he now lives, &c. by his paying to the other heirs the sum of ——.   I give and devise to my son D. A. [the defendant] all the homestead whereon I now live, &c. by his paying to the other heirs the sum of ——.   I give to my son S. W. the use of the C. farm during his life, and then to his heirs if he should leave any ; if not then the law makes provision in such cases.   But if he reforms during my life, I think he ought to have more.   It is my will and intention that R. D. and D. A. [his sons] shall support me and pay all my debts.   I am not prepared at present to say what each must pay : my book will show, nearly, what each one has had ; after paying D. and D. A. for their labor, that should be made as nearly equal as possible."   In an action of ejectment brought by the other heirs of the testator, against D. A. to recover possession of the premises

devised to him.  *Held* 1.  That if the devises of the real estate were intended to be upon *condition*, the conditions were subsequent, and they being impossible to be performed, by reason of the testator's neglect to specify the sums to be paid by the devisees, were void, and the devisees took absolute estates in fee.

2.  That the clauses of the will respecting the payment to the other heirs, by the devisees, of sums of money not specified by the testator, could not be regarded as *limitations* of the estates devised.

3.  That the will was not void for uncertainty, but was valid, and sufficient to pass the real estate devised to the defendant.

When a condition *subsequent* becomes impossible to be performed, the estate will not be defeated or forfeited ; *aliter* as to conditions *precedent*.

It is a well established rule, in the construction of wills, that no form of words will constitute a condition precedent, where the intention of the testator, to be collected from every part of the will, clearly indicates a different purpose.

Conditional limitations are never to be extended beyond what is absolutely necessary from the context of the will, and will not be supposed to govern any disposition, except that upon which they may naturally be supposed to attach.

It is no argument against the validity of a will that it makes no provision for the payment of the legacies.  When no direction is given by the testator, the law appropriates the personal property to the payment of legacies.

THIS action was brought for the recovery of the possession of real property situated in the county of Saratoga, by the plaintiffs as some of the heirs at law of Dutee Ballou deceased. The defendant set up as a defense, the will of Dutee Ballou, and claimed as devisee under it.   The clauses in the will, under which it was claimed the devise was to be sustained, were as follows: "First. I give and devise to my sons *all my real estate*, together with the stock, and farming utensils, and hogsheads, barrels, boxes, that are in use or useful on the premises. *The land to be divided as hereafter mentioned.*"   After giving legacies to several of his children and grandchildren, most of whom are plaintiffs in this action, the testator proceeded as follows: "I give and devise to my son Rensselaer all that farm whereon he now lives, (commonly called the Gifford farm) by his paying to the other heirs the sum of ———.   I give and devise to my son Dutee the farm whereon he now lives, commonly called the Kelsey farm, together with the lot that was pur-

chased off the Brower farm, by his paying to the other heirs the sum of ——. I give and devise to my son Daniel A. [the defendant] all the homestead whereon I now live, together with the lot called the Rosevelt lot, by his paying to the other heirs the sum of ——. I give to my son Samuel Willard, the use of the Crandall farm, during his life, and then to his heirs if he should leave any, if not, then the law makes provision in such cases. But if he reforms during my life, I think he ought to have more. It is my will and intention that Rensselaer, Dutee and Daniel, shall support me and pay all my debts. I am not prepared at present to say what each must pay; my book will show, nearly, what each one has had; after paying Dutee and Daniel for their labor, that should be made as near equal as possible.

*Lastly.* I hereby nominate, constitute, and appoint, my said sons Rensselaer, Dutee and Daniel, my sole executors of this my last will and testament, hereby establishing and confirming this, and this only, as my last will and testament." In testimony, &c. Signed and sealed. The plaintiffs demurred to the answer, thereby presenting the question, as to the sufficiency of the will to pass the real estate in controversy to the defendant.

*A. Dean,* for the plaintiffs.

*S. Stevens,* for the defendants.

*By the Court,* C. L. ALLEN, J. The principal argument urged in support of the demurrer in this case is, that the will is entirely inoperative as a will of real estate, for the reason that the devises are made upon a condition which the testator has omitted fully to express. That the will was therefore never completed and does not declare the intention of the testator as to the disposition of his real estate, and that there are no legal means of supplying the omission and arriving at that intention. It is admitted that the devises contained in the first clause, standing alone, uncontradicted and unexplained, would pass the real estate, and create the sons tenants in common. But it is insisted that the first clause is to be taken in connection with

the second, and is either superseded or controlled by it. That if the devises in the first and second clause are not connected together, then the second is to control, and amounts to a revocation of the first.

I. The first question that seems to present itself for consideration is, whether there is *any condition* stated in the will, or whether any was intended to be imposed. The rule of construction of wills is, as I understand it, that if the general intention of the testator can be collected, or any one particular object ascertained, expressions militating against that, may be rejected, if plainly appearing to have been inserted by mistake; and so with words apparently omitted by design. (*Lines* v. *Doughty,* 5 *Vesey,* 243. *Melish* v. *Melish,* 4 *Id.* 44. *Constantine·* v. *Constantine,* 6 *Id.* 100. *Phillips* v. *Chamberlin,* 4 *Id.* 52. *And see* 1 *John. Ch.* 494; *Jackson* v. *Sill,* 11 *John.* 201.) The rule is, says the master of the rolls, in *Melish* v. *Melish,* "That wherever there is a clear mistake, *or a clear omission,* recourse is to be had to *the general scope of the will,* and the *general intention to be collected from it.*" · In *Phillips* v. *Chamberlin,* the master of the rolls again observed, that the will "is so inaccurate that though an intention to give a legacy to the Humane Society is expressed, no legacy is interposed and consequently no legacy to them can take place." Yet from the general intent of the testator to be gathered from the whole of that will, a sum of £20,000 was substituted for one of £30,000 inserted in one of the clauses, the court being clearly of opinion· that the former sum was intended instead of the latter. In *Sherrat* v. *Bentley,* (2 *My. & K.* 149,) the testator gave to his wife all other his real estate, and to her heirs, executors, administrators and assigns for ever. He then directed that none of the legatees should be entitled to take until twelve months after his wife's decease; and in case his wife should happen to die, in his lifetime, and the before mentioned *devises and bequests to her, real as well as personal, should* lapse then the estate was given to S. to the use of such persons as his wife should by writing under her hand appoint. The testator then gave some pecuniary legacies; and proceeded to devise and be-

Martin v. Ballou.

queath to W. A. and his (testator's) brother-in-law's children, the residue of his real and personal estate, to be equally divided amongst them, share and share alike, *at the decease of his said wife*. The heirs at law contended that the will was void for uncertainty, on account of the repugnance, between the gift to the wife, and afterwards of the residue to others. It was held that the testator's general intention, as collected from the concluding passages in his will, was to give the wife the full enjoyment during her life only, and to the persons named, afterwards ; and that the words heirs, executors, administrators and assigns were to be rejected, on the ground that the latter part of a will shall prevail, against inconsistent expressions in the prior part of it. It is a settled and invariable rule in all these cases not to disturb the prior devises, further than is absolutely necessary for the purpose of giving effect to the posterior qualifying disposition. (1 *Jarm. on Wills*, 414.) Without reviewing the cases, see those collected in 1 Jarman from page 414 to 417.

The courts have always been anxious to adopt such a construction as will reconcile, and give effect to all parts of a will, and hence it is clear that words and passages, which are irreconcilable with the general context may be rejected, whatever may be the ideal position which they happen to occupy ; for the rule which gives effect to the posterior of several inconsistent clauses must not be so applied as in any degree to clash or interfere with the doctrine which teaches us to look for the intention of a testator in the general terms of the instrument, and to sacrifice to the scheme of disposition so disclosed, any words and phrases which have found a place therein. (12 *Mass. Rep.* 537. *Helmer* v. *Craydock*, 3 *Vesey*, 317.) Let us examine and test this case by the rules and principles considered in the numerous decisions to which we have above adverted. The first clause is, "*I give and devise to my sons all my real estate, together with the stock, &c. that are in use or useful on the premises, the land to be divided as hereafter mentioned.*" This language is full and explicit, and the revised statutes make it an absolute devise, unless controlled, by the subsequent clauses in the will. (2 *R. S.* 33, § 1, 3d ed. Also *Id.* p. 119, § 5.) The divis-

ion mentioned in the first clause was intended to be carried out by the subsequent clause, making the specific devises to each of the sons. It may have been and probably was the intention of the testator, at one time, to cause each of these heirs to pay either the whole or a portion of the legacies bequeathed in the previous clauses, or perhaps an additional sum; but it is just as probable that afterwards he abandoned that intention; and supposed that leaving the sum-blank would be equally as effective as striking out the whole sentence. This would seem to be evident from the clause, following the one containing the specific devise to the defendant, in which he says, "I give to my son Samuel Willard the use of the Crandall farm during his life, and then to his heirs if he should leave any, if not the law makes provision in such cases." In the same clause, he further says, It is my *will and intention*, that Rensselaer, Dutee and Daniel shall support me and *pay all my debts*; and then *lastly* he appoints those sons his sole executors, and adds, "hereby establishing and confirming this and this only as my [his] last will and testament." Now the devise to Samuel contains no clause intimating any condition, and though it is to him for life, yet the remainder is to his lawful heirs if he leave any; if not, then to the heirs at law of the testator. In the same clause the declaration that it is his will and intention that his sons Dutee, Rensselaer and Daniel shall support him and pay all his debts, clearly shows that he intended to impose those obligations as a part consideration for the several devises to them, and confirms the idea that the intention of the testator, to be collected from the whole will, was to devise to the three sons the several parts of his real estate, specifically described in the three clauses objected to; or rather that those clauses should constitute the *division* referred to, in the first clause of the will. Can any other construction, be reasonably and fairly assumed or presumed? Will any one, on reading the will, be ready for a single moment to believe that the testator intended to die intestate as to those portions of his real estate? He had bequeathed legacies to most if not all his other heirs, some more and some less. To his daughter Malinda he gave, in case she should marry, the

Martin *v.* Ballou.

same outfit as his other daughters, who had already married, had received, and $100, in addition, being the same sum he gave to his married daughters. He also gave to his daughters and heirs all the household furniture, and also legacies to certain of his grandchildren; thus making provision for all or nearly all his other children and grand children, and who would naturally expect to be the recipients of his bounty. To the three sons he gives nothing but the farming utensils, boxes and barrels, mentioned in the first clause, which also contains the devise; evidently relying on that and the subsequent clauses as sufficient to fully carry out his purposes as to them. It is further evident from the concluding clause of the will, that Dutee and Daniel had labored for the testator more or less, and that circumstance probably also entered into the consideration of the devise, and is one in aid of the construction we are inclined to adopt in support of it.

The very fact of charging the payment of his debts on the devisees, constitutes a very strong reason in favor of this construction. It has been held in a large number of cases, and is at this day settled, that where before the revised statutes, a testator devised lands to his sons, without using words of inheritance, on condition that the devisees should pay all his debts, such devise passed a fee, for the reason that the charge was on the person of the devisee, and he might be the loser if a life estate only passed; but that a life estate would only be created if the charge was upon the land, or upon the rents and profits. In *Jackson* v. *Bull,* (10 *John.* 148,) the devise was, " I give to my son David the farm he now lives on, and I give to my two sons Joshua and Ephraim, the farm I now live on, to be equally divided between them, and for Joshua and Ephraim to pay to my daughters Lydia, Betsey and Mahitable, £20 apiece, to be paid by my executors out of my moneys and movables, the debts to be paid out of my estate that I shall die seised of." The question was whether the sons took an estate in fee, or for life. Kent, Ch. J., in delivering the opinion of the court, says, " The distinction which runs through the cases is, that when the charge is upon the estate, and there are no words of limitation, the de-

Martin *v.* Ballou.

visee takes only an estate for life, but when the charge is on the *person* of the devisee, in respect of the estate in his lands, he takes a fee, on the principle that he might otherwise be a loser." See also *Goodtitle* v. *Maddern*, (4 *East*, 496.) And so when the *devisee was to pay legacies and debts thereout*, so that the devisee was charged personally, held that a fee passed, for the reason that if the devisee only took an estate for life, the debts might become payable before the rents became due, and he might not live long enough to reimburse himself. (*Doe* v. *Snelling*, 5 *East*, 87.) In *Doe* v. *Holmes*, (8 *Term Rep.* 1.) the clause was, "I give my house and furniture to A. she paying all my debts and legacies. I likewise leave to A. all the rest of my personal estate. Lord Kenyon said, "Here the devisee is bound to pay the debts and legacies at all events, and the charge is thrown on her in respect of the real estate. The devisee takes a fee; otherwise she might be a loser." Did the testator here intend to charge these three sons with the payment of his debts and his own support, and devise or bequeath them nothing in the will—thus leaving this burden exclusively upon them, with no more than the equal share with the other heirs, which the law would afford them in the general distribution and division of his estate? I apprehend not. The clause must be taken in connection with all the other parts of the will, and if construed with them, leaves no room for doubt, and requires effect to be given to the intention of the testator. (*Lippen* v. *Eldred*, 2 *Barb. S. C. Rep.* 130.) The testator has omitted, for his own reasons, to fill up the blank, and the court cannot assume that he did not express his intentions, or that he did not intend to leave the blank. The subsequent *clause confirming the will*, favors the idea that the intention to fill the blank was abandoned. The language used must control, and the intention must be expressed with reasonable certainty on the face of the will. (*Lippen* v. *Eldred, supra. Jackson* v. *Schauber*, 7 *Cowen*, 187.) The expressions which cannot have any meaning, are to be rejected as if they had not been written, and do not hinder the others from having their effect. The intent is manifest to devise the land in question, and must control. (*Harvey* v. *Olm-*

Martin *v*. Ballou.

*stead*, 1 *Comst.* 483, 490.) The devise here is absolute, and a subsequent clause void in law will not affect it. (*Root* v. *Stuyvesant*, 18 *Wend.* 257, 275, 287, 301, 267, 8.)

When the true meaning of the testator, in the several parts of his will, has been ascertained, the statute declares that it shall be the duty of courts of justice to carry into effect the intent of the party, so far as it is consistent with rules of law. ( 1 *R. S.* 748, § 2.) This has been construed to mean that in the case of wills, the method of the court has been *not* to set aside the intent, because it cannot take effect so fully as the testator desired, but to let it work as far as it can. (18 *Wend.* 307. *And see Helmer* v. *Shoemaker*, 22 *Id.* 137, *and Schermerhorn* v. *Negus*, 1 *Denio*, 448.) The testator in this case, was probably his own scrivener; the language used in the will, is peculiar and often inartificial and obscure. But it cannot, I think, be doubted that the intention was to devise the real estate in question to the defendants, and that we would be doing great injustice to the wishes of the testator, if we were to come to a different conclusion. Furthermore, there is no residuary clause in the will, which furnishes an additional reason for the conclusion that the testator believed, at the time of its execution, that he had disposed of all his property.

II. But suppose it was the intention of the testator to charge a condition, in the clause making the specific devise to the defendant, and the other clauses to two of the other devisees. Is the omission to insert the sum which defeats the intended legacy, fatal to the devise? The plaintiffs contend that if the devises in the 1st and 2d clauses are not connected together, the second clause is to control, and amounts to a revocation of the first, inasmuch as the two vary; the first being in gross, and the second being specific; or, that if the first and second clauses are to be considered as connected, the first is inoperative, except as it is modified and controlled by the second; and that in either case, the entire disposition of the real estate is made dependent upon the second clause. That the second clause is void for the reason that the will in respect to it has never been completed by the testator, and does not *express fully his intention as to*

*the disposition* of his real estate, and there is nothing on the face of the will, by which his intention can be arrived at; that the devises are each made subject to a condition which the testator has rendered it impossible to perform, by omitting to state the sum which each devisee was to pay. I do not understand the plaintiffs to urge that the whole will is void. It is not for their interest to claim that the clauses giving the pecuniary legacies are to be declared invalid; and yet the evident intention of the testator, to be gathered from the whole will, would be disregarded by such a construction. For it is clear from the phraseology, that he would not have created these legacies, if he had supposed that he was to die intestate as to his real estate.

But the question is, are the devises void? In the first place, what has already been remarked, may be repeated here, that when there is an absolute devise, a subsequent provision, void in law, will not affect it. (*Schermerhorn* v. *Negus,* 1 *Denio,* 448. *Helmer* v. *Shoemaker,* 22 *Wend.* 137.) If the will can have a legal execution as to the devises, and its provisions do not conflict with any settled principles of law, it is valid. (*Fox* v. *Phelps,* 17 *Wend.* 401.) If there is no uncertainty of *subject or object,* the devise is held to be valid. In the construction of wills, the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators. " No degree of technical informality, nor the most perplexing confusion in the collocation of words and sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument, the *intention* of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together." (1 *Jarm.* 315 *to* 318.) A general intent in a will is to be carried into effect at the expense of any particular intent, provided such general intent be consistent with the rules of law; for where there are conflicting intents, the most important must prevail. " Every inaccuracy of grammar shall be corrected by the general meaning, if that be clear and manifest." (*Inglis* v. *Trustees of Sailors' Snug Harbor,* 3 *Peters,* 117.) To avoid a will for uncertainty, it is not enough that the dispositions in it are so

obscure and irrational, that it is difficult to believe they could have been intended by the testator; but it must be incapable of any clear meaning. (*Marvin* v. *Robinson*, 2 *Sim. & Stu.* 295.) Where the intended subject matter of disposition consists of an indefinite part or quantity, the gift necessarily fails for uncertainty, but the will itself is sustained, as in *James d. Henry* v. *Hancock*, (4 *Dow.* 145.) The testator in that case devised land to his daughter, Ann Henry, for life, with remainder to her first and other sons in tail male, remainder to his other daughter, Frances. The devise to Ann was on condition that she married a man possessed of a property at least equal to, if not greater than the one he left her; and if she married a man with less property than that, then he left her only as much as should be equal to the property of the man she should marry, and all the remainder should immediately pass over to his second daughter, Frances, to whom in that case, he bequeathed it. It was held that the devise over was void for uncertainty, as the specific *portion or share, did not* appear in the will itself. So a request by a testator, that a handsome gratuity shall be given to each of his executors is void for uncertainty. (*Jubber* v. *Jubber*, 9 *Sim.* 503.) Suppose in this case the words had been, I give and devise to my son the homestead I now live on, by his paying to the other heirs a handsome gratuity; the intention would have been clearly manifest to devise the farm to the son, and the will would have been valid, but the intended pecuniary legacies or gratuities, would have been void for uncertainty. This question was discussed in part by Mr. Justice Cowen, in *Salmon* v. *Stuyvesant*, (16 *Wend.* 321.) He remarks on pages 332, 333, "The case of *Lorillard* is relied upon as in principle overturning the whole will. The rule in that case is said to be, that a failure in part is fatal to the entire instrument; that the intent of the testator—the soul of the will—is indivisible; that the whole must be effectuated or its identity is lost, and it can no longer be known or traced by the law. That case holds no such doctrine. Such a decision in that, or any other cause, by this court, would operate as a sentence of nullity, against the more important class of wills. No wills of any considerable estate, embracing vari-

ous kinds of property and seeking to provide for a numerous family, by the bestowment of different interests, could ever stand the test of such a principle. Some slight mistake of testamentary power, some uncertainty of expression, some lapse of ademption, or one of the thousand occurrences which baffle human wisdom and forecast, always have arisen, and always will arise to prevent the exact fulfillment of all the testator's purposes." But the strongest case that I have been able to find, and one most nearly assimilated to the one under consideration, is that of *Comstock* v. *Hadlyme*, (8 *Conn.* 254.) There the question arose, whether an important omission in drafting a will, would render it void. The facts were that the testatrix, intending to give a legacy of $100 to each of her grandchildren, instructed the scrivener to insert such provisions in her will, and executed it supposing that the legacies had been duly inserted. The scrivener inserted the names, but by mistake omitted the amount. The court held that such mistake did not render the will void. Williams, justice, in delivering the opinion of the court, remarked, " It is said that this omission makes the will *void*, that it shows it was not her will—not the will she intended to make. Now, if a mistake in drafting a will makes it void, it is certainly very surprising that no case has been produced from an English or American book in support of the proposition, although the various decisions relative to the construction of the statute of frauds, would fill volumes. It cannot be believed but that similar mistakes have been often made. The statute, when it required all wills to be in writing, certainly intended that the evidence, and the whole evidence of the disposition of the property by will should be the will itself; that the evidence of the intent of the devisor should be derived from the writing signed by him, and solemnly attested ; otherwise innumerable would be the cases where evidence of mistakes would be claimed and proved. How often is it that the words used by the scrivener convey a different estate from what the testator designed. Yet it has always been decided, that parol testimony could not be admitted to prove that the devisor meant to give a different estate from what the will expressed. (*Chapel*

Martin *v.* Ballou.

v. *Avery*, 6 *Conn.* 34. *Farrel* v. *Ayres*, 5 *Pick.* 407.) And if it is settled that you cannot, by parol proof, alter the legal import of the terms used by ·the scrivener, such a will must either be void, or convey a different estate from the one intended. That such a will is not void, is proved by repeated declarations of judges, that by the legal construction they knew the intent of the testator was frequently violated. If by the construction given to the words used, the intent may be defeated and yet the will remain valid, why may not the same effect follow, where it arises from an omission to insert certain words which were intended. In neither case is the effect of the will exactly what the testator intended. But in neither case can the fact be ascertained without the aid of parol testimony, which cannot be admitted. It would seem that in this case, if any remedy existed, it could be one that would not destroy the whole will, but one which would correct the mistake and make the will what it ought to be. This has been attempted in a recent case, and it was decided that parol testimony could not be admitted to prove the mistake; it would be to make a will by witnesses and not by writing."

I have quoted thus largely from this opinion, because I think its reasoning has a strong bearing upon the present case, and answers more fully than I can do, some of the most material objections that are urged against the will under consideration. Here it is contended, as in *Comstock* v. *Hadlyme*, that *it is not the testator's will;* that it has never been completed by him; *" that it is not the will he intended to make."* And yet the devises and bequests were left to stand in that case, notwithstanding the very defect existed there which it is claimed vitiates the devise here. The case of *Trippe* v. *Frasier*, (4 *Harr. & John. Rep.* 446,) also goes to establish the same principle. There the testator left a legacy to the female charity school in Talbot county, if such an institution should be founded on good principles; otherwise to be distributed among the real distressed private poor of Talbot county. There was no school of that kind, and the legacy was held void for uncertainty. But the rest of the will was held good. So in the case of the *ad-*

*ministratrix of Rathmahler* v. *Myres,* (4 *Dess. Ch. Rep.* 215,) a legacy was given to one who could not legally take it, and it went to the residuary legatees, but the rest of the will was held valid. Again, in the case of *Flint* v. *Hughes,* (6 *Beav. Ch. Rep.* 342,) the bequest was to A. for life, and whatever she could tranfer to go to her daughters B. and C. Held, that the bequest to B. and C. was void for uncertainty; but the bequest to A. was held good. There are many other cases going to support the same principle. (*See Pope* v. *Pope,* 10 *Sim. Ch. Rep.* 1; *Kane* v. *Gott,* 24 *Wend.* 641.) But it is not deemed necessary to pursue further.

It is further contended in aid of the argument on the part of the plaintiffs, that the phraseology, " by his paying to the other heirs the sum of —— is a condition precedent to the vesting of the estate in the devisees, and that the condition being precedent and of impossible performance, no estate can vest in the devisee. It is undoubtedly true, as a general principle, that a precedent condition is one which must take place before the estate can vest or be enlarged, and that it must be literally performed; and if it becomes impossible to be performed, even though there be no default or laches on the part of the devisee himself, the devise fails, and even equity will not relieve. (4 *Kent's Com.* 125. 1 *Jarm. on Wills,* 806. 2 *Coke, Lit.* 206, *B. Harvey* v. *Ashton,* 1 *Atk.* 361. *Vanhorn's lessee* v. *Dorrance,* 2 *Dall.* 304, 317. *Taylor* v. *Mayer,* 9 *Wheat.* 350.) But the rule is different if a condition subsequent becomes impossible. In that case, the estate will not be defeated or forfeited. (2 *Bl. Com.* 154, 5, 6. 2 *Vern.* 339. *Powell on Devises,* 202. *Finley* v. *King's Lessee,* 3 *Peters,* 346, 374, 5, 6.)

If I am correct in the first position which I have taken, there was no condition created; the words " by her paying to the other heirs the sum of ——" being simply void, and intended by the testator to be of no effect, and to be so construed. If the testator had filled up the blank with a definite sum, there would have been a condition. But I am not prepared to concede that it would have been a condition precedent, or that the language used creates such a condition. It is another well established

rule of construction of wills, that no form of words will consti-
tute a condition precedent, where the intention of the testator,
to be collected from every part of the will, clearly indicates a
different purpose. (1 *Jarm. on Wills*, 797. *Stott* v. *Smiley*,
25 *Maine Rep.* 201.) There are no technical words to distin-
guish between conditions precedent and subsequent, and whether
they become one or the other is matter of construction, depend-
ing upon the intention of the party creating the estate. The
same words have been determined differently. If the language
of the particular clause or of the whole will shows that the act
on which the estate depends must be performed before the estate
can vest, the condition is precedent, and unless it be performed,
the devise fails. But if the act does not necessarily precede the
vesting of the estate, but may accompany or follow it, if the act
may as well be done after, as before, the vesting of the estate,
and if this is to be collected from the whole will, the condition
is subsequent. Another general rule is, that a devise in words,
of the present time, as "I give to A. my land," imports, if no
contrary intent appear, an immediate interest which vests in the
devisee on the death of the testator; and another is, that if an
estate be given on a condition, for the performance of which no
term is limited, the estate vests immediately on the death of the
testator: the condition is subsequent. Thus in the case of
*Finley* v. *King's Lessee*, before cited, the testator made a liberal
provision for his wife for her life, besides her dower, out of part
of his real estate, and devised in case of his leaving a child or
children, the whole of his estate to such child or children, except
the provision for his wife, and some legacies, and then declared,
" In case of having no children, I then leave and bequeath all
my real estate at the death of my wife to William King, son of
brother James King, on condition of his marrying a daughter
of William Twiggs and my sister Rachel his wife, lately Rachel
Finley, in trust for the eldest son or issue of said marriage; and
in case said marriage shall not take place, I leave and bequeath
said estate to any child, giving preference to age, of said Wil-
liam and Rachel Twiggs, that will marry a child of my brother
James King, or sister Elizabeth, wife to John Mitchell, and to

their own issue." The testator died without issue. William and Rachel Twiggs never had a daughter. The court held that the condition on which the devise to William King depended was a condition subsequent, and remarked in giving the opinion, that they had found no case, "*in which a general devise in words* importing a present interest, in a will making no other disposition of the property, on a condition which may be performed at any time, has been construed, from the mere circumstance that the estate is given on condition, to require that the condition must be performed before the estate can vest. • There are many cases in which the contrary principle has been decided;" citing 2 *Atk.* 18 ; 2 *P. Wms.* 620 ; 2 *Powell on Devises,* 257 ; 1 *Salk.* 170 ; 4 *Mod.* 68 ; 2 *Salk.* 570.

In another case, a person having three daughters devised lands to his eldest daughter, upon condition that she should, within six months after his death, pay certain sums to her two sisters, and if she failed, then he devised the land to his second daughter, on the like conditions. The court said it would enlarge the time of payment, though the lands were devised over, and *that in all cases* that lie in compensation, the court may dispense with the time, *even in the case of a condition precedent.* (*Woodman* v. *Blake,* 2 *Vern.* 222, *cited in* 2 *Cruise's Dig,* 47, § 36, 4.) So a person devised land to his kinsman J. S., he paying £1000 apiece to his two daughters who were his heirs at law. J. S. made default, and the daughters recovered in ejectment. It was decreed that the devisee of J. S. should be relieved on payment of the principal and interest, though in favor of a voluntcer and to the disinherison of the heirs. (*Barnardiston* v. *Fane,* 2 *Vern.* 366. 2 *Cruise's Dig.* 48, § 37.) In *Doe* v. *Scudamore,* 2 *Bos. & Pull.* 289, Lord Eldon remarks, on page 295, " I take it to be fully settled, that a condition is to be construed to be precedent or subsequent as the intent of the testator may require." And Heath, J. on page 297, says, " It has been truly said that there are no technical words, by which a condition precedent is distinguishable from a condition subsequent, but that each case is to receive its own peculiar construction according to the intent of the devisor. The question always

is, whether the thing is to happen *before* or *after* the estate is to vest. If *before,* the condition is *precedent ;* if *after,* it is *subsequent.*" The case of *Ward* v. *Ward,* (15 *Pick.* 511,) in substance decides the same principle. The testator there devised three farms or tracts of land to his son by his paying the other children, towards their share of the estate, $300. Two were disposed of in the lifetime of the testator; held as to the other, that the devisee had his election to take the land and pay the legacies. If he would not take the land and pay the legacies, that the heirs might enter and take the estate so devised, upon condition, citing *Co. Litt.* 236 : "Devise to A. and her heirs to pay B. a sum of money adjudged a condition, and that the others may enter for condition broken." Now testing the will under consideration by the principles settled in the cases just reviewed, what was the intention of the testator, as to the condition (if *any*) in the latter clause in the will? The devisees were already in possession of and enjoying most of the real property devised to them. He knew that each of them was perfectly able to pay the amount which he intended to impose. He did not direct that the payment should precede the vesting of the estate, by clear and explicit words, but the words import a present intent. By our revised statutes, legacies, unless expressly directed in the will, *shall* not be paid under one year from the death of the testator. He also connects with the condition the direction to pay all his debts. Did he intend, under all these circumstances, that the estate devised should not vest until the happening·of all these events? or is it more reasonable to presume that he calculated the devisees would pay the sums required when called upon by the legatees and creditors ? In the case of the legacies, they would not be payable under a year ; and as to the debts, they might not be all due ; and the cases before cited show that where debts are charged to be paid, the condition is subsequent. Again ; the devise, subject to all the conditions, was beneficial to the devisees, who would be presumed to accept and perform the condition, and the heirs could enter by ejectment if they were not performed. If land be devised upon condition that the devisee pay certain legacies, he becomes personally liable, upon

his accepting the devise; and they are chargeable in equity upon the land, whether he accepts the devise or not. (*Birdsall* v. *Hewlett,* 1 *Paige,* 32.) If the devisee accept the land subject to a charge, he becomes personally liable for it. (*Elwood* v. *Deifendorf,* 5 *Barb.* 398.) In *Newkirk* v. *Newkirk,* (2 *Caines,* 345, 352,) a devise of all "my right in the Patentees' woods to my children in case the same continue to inhabit the town of Hurley, otherwise not," was held to pass the fee; and the condition was held to be subsequent and void as repugnant to the nature of a fee.

It is most consistent with the intention of the testator, as well as with the cases on this subject, to hold, that the condition (if any here) was subsequent. If the condition was subsequent, the cases before cited show that if it is, or becomes, impossible, the estate will not be defeated or forfeited. An impossible condition is the same as none; it is void, and there can be no breach. It leaves the will the same as if the void clause or sentence was stricken out, and then of course it devises an absolute estate in fee simple.

Thus the same conclusion is arrived at on this point, and we come back to give effect to the plain and undoubted intent of the testator. The same remarks and reasoning will apply to the remaining point urged by the plaintiffs' counsel, that the clause must be regarded as a limitation of the estate, which being left undefined and impossible to arrive at, no estate has vested. The testator has failed to impose any limitation to the devise. He probably, as before remarked, intentionally omitted so to do. Conditional limitations are never to be extended beyond what is absolutely necessary from the context of the will, and shall not be supposed to govern any disposition, except that upon which they may naturally be supposed to attach. (*Holmes* v. *Craydock,* 3 *Ves.* 320. *McLean* v. *Macdonald,* 2 *Barb. S. C. Rep.* 534.) It is said that no provision is made in the will for the payment of the legacies. That is no argument against its validity. The debts are provided for, and there is no disposition made of the personal property, except such as is mentioned in the will. When no direction is made, the law appropriates

the personal property to the payment of legacies. (2 *R. S.* 159, *3d ed.* 154. 2 *John. Ch.* 614. *Hoes* v. *Van Hoesen,* 1 *Comst.* 120. *And see Kelsey* v. *Western,* 2 *Id.* 500; *and Dodge* v. *Manning,* 11 *Paige,* 334.) It does not appear how much personal property remained; nor whether there was sufficient or not to pay the legacies. The question does not arise here, whether these legacies, in case there was not sufficient personal property to pay them, would be a charge upon the real estate. Nor do I mean to express an opinion whether it was or not the intention of the testator to charge their payment upon the real estate or upon the devisees; or whether or not they would be chargeable with their payment. The will being held valid, the legacies will probably be paid. (*Harris* v. *Fly,* 7 *Paige,* 421. 11 *Id.* 334.)

There must be judgment for the defendant on the demurrer, with leave to the plaintiff to amend on payment of costs.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Cady, Hand* and *C. L. Allen,* Justices.]

