No. 10.—JOHN S. TAYLOR and others, plaintiff in error, *vs.* ANDREW SUTTON, defendant in error.

[1.] The history of new trials.

[2.] Before Equity will interfere to grant relief against a judgment at Law, three things must concur : ignorance of the defence sought to be set up at the time the judgment at Law was rendered, without negligence being imputable to the complainant, and a want of adequate relief at Law.

[3.] New trials will be granted in ejectment, as well as in other cases.

[4.] Conditions in deeds, are precedent or subsequent ; the latter class are not favored.

[5.] Formerly, Courts of Chancery decreed pecuniary compensation, in lieu of conditions subsequent, when broken ; at a later day, they granted relief only against the condition, whenever the forfeiture was inevitable, and pecuniary compensation could be made.

[6.] Courts of Equity have struggled hard to construe conditions subsequent into covenants, and send the party aggrieved to Law to get his damages for the non-performance.

[7.] Conditions subsequent, whether to pay a certain sum of money or to do any other thing, are good, unless impossible to be performed, illegal or repugnant to the deed ; in which case, the conditions, themselves, are void, and the grantee takes, at once, an absolute estate.

[8.] The persons who have an estate of free-hold, subject to a condition, are so seized that they may convey or devise the same, or transmit the inheritance by descent, to their heirs, though the estate will continue defeasible until the condition be performed, or destroyed, or released, or barred, by the Statute of Limitations or by estoppel.

In Equity in Dooly Superior Court.   Decision on demurrer, made by Judge POWERS, October Term, 1853.

Hugh F. Rose drew lot of land No. ninety, in the 10th dis-

trict of Dooly county, for which he received a plot and grant from the State. In 1841, Rose sold the land to Eli Benson, the latter giving his notes for the purchase-money. Rose executed the deed to John S. Taylor, with the understanding and agreement inserted in the deed, that if the purchase-money was not paid, then the deed was to be null and void. Rose and Benson both departed this life, and in 1846 executions obtained against James B. Boyer, as the administrator of Rose, were levied upon the land, as the property of Rose; by virtue of which the land was sold at Sheriff's sale, and William Mims became the purchaser. In 1847, Andrew Sutton purchased the land from Mims, and took his deed thereto; and under said deed went into possession. In 1850, Taylor commenced an action of ejectment against Sutton, for the land; and at April Term, 1852, of the Superior Court of said county, a verdict was rendered for plaintiff, and judgment entered; upon which a writ of *habere facias* was issued and placed in the hands of the Sheriff, who was proceeding to execute the same.

The bill alleged the foregoing facts; also, that the action of ejectment was not prosecuted by Taylor, the plaintiff, but by Wm. Brown, an attorney at law, who used Taylor's name for that purpose.

The bill further charged, that the purchase-money for said land, had never been paid by Benson; that he was dead, and his estate entirely insolvent; that by Brown's importunity, complainant had been induced to execute to said Brown a quit-claim title to said land, for the sum of fifty dollars.

The bill prayed that the judgment rendered in the ejectment cause, might be set aside and a new trial ordered.

To this bill, the defendants filed a demurrer, with specifications.

The Court over-ruled the demurrer, and gave complainant leave to amend his bill.

To which decision, counsel for defendant excepted.

STROZIER, for plaintiff in error.

DAWSON, for defendant in error.

Taylor *et al. vs.* Sutton.

*By the Court.*—LUMPKIN, J. delivering the opinion.

An action of ejectment was brought by John S. Taylor, against Andrew Sutton, to recover lot No. 90, in the 16th district of Dooly county.   On the first trial, the defendant confessed judgment, with liberty of appeal.   He entered an appeal, and again confessed judgment.   He now files his bill for a new trial, and general relief.

He states, amongst other things, that this tract of land was drawn by one Hugh F. Rose, to whom it was granted by the State ; that it was sold, in 1846, under a Justice's Court execution against James B. Boyer, as administrator of Rose, the grantee, and bought by one William Mims, who conveyed the lot to complainant; that the property was in the woods at the time ; that he went into possession and made valuable improvements before the action of ejectment against him, in 1850 ; that he was compelled to confess judgment, as he had no means of defending his possession against the title of the plaintiff, which consisted of a copy-grant from the State to Rose, and a deed from Rose to Taylor ; that it is true that the deed contained a condition, to the effect that the conveyance was to be void, provided the purchase-money, ($150,) was not paid, but that he was unable to prove that the same had not been paid.

That after the recovery in ejectment was had against him, he called upon Taylor, the plaintiff, to obtain some indulgence, in not being immediately turned out of possession, when Taylor informed him that he had no interest in the premises, whatever, and never had had ; that one Eli Benson purchased the lot of Rose, and gave him his notes for the consideration money, and had the deed made to him, (Taylor,) but that neither Benson, who was insolvent at the time, and died so, nor himself, had ever paid one dollar for the land.

That he was induced, by the importunity of one William Brown, to make to him a quit-claim title to the property, which he did, with a full knowledge, on the part of Brown, of

Taylor *et al. vs.* Sutton.

all the facts; and that the action had been instituted by Brown, and was prosecuted for his sole benefit. Taylor further directed complainant to apply to Boyer, the administrator of Rose, who could put him in possession of all the proof which he needed, to defend himself.

The bill further alleges that complainant called on Boyer, who informed him that he found the notes for the land among the papers of Rose, his intestate; that in 1844 he called on Benson, the maker, who was then in life, for payment of the purchase-money, but that neither he nor any other person had ever paid the notes. Boyer's affidavit, containing these statements, was appended to the sworn bill.

A demurrer was put in to this bill and over-ruled; and this writ of error is prosecuted to reverse this decision.

Is the bill maintainable?

[1.] The history of this branch of Equity Jurisdiction, is briefly this: The first instance to be met with in any book of legal authority, of a new trial, with reference to the merits of the case on the evidence, is in the year 1665. *Temp. Charles*, (11 *Styles' R.* 462, 466.) It is supposed to be owing to the fact that *motions* were not reported before that time. For many years afterwards, new trials were grudgingly granted at Common Law; and for that very reason, Courts of Equity were liberal in granting relief against Common Law judgments, and the Court of Chancery was induced to take to itself the decision of legal questions, in many cases, which now appear to have been beyond the legitimate bounds of its jurisdiction.— For it is now universally admitted, that trials by Jury, in civil cases, could now subsist without a power residing somewhere to grant new trials. Misconduct, mistake, surprise and prejudice, and the other grounds of failure, which are now provided against by this expedient, must have operated in ancient times, equally as now.

But now, the thing is changed, and it is the every-day practice to grant new trials at Law, and upon the most equitable principles. And Courts of Chancery seldom, and always reluctantly, interfere for this purpose.

[2.] The adjudications upon this subject, especially in the United States, have been fluctuating and somewhat contradictory. It may be stated, however, as the result of the whole doctrine, that before the relief prayed for in this and like cases will be granted, three things must concur: ignorance of the defence sought to be set up at the time the judgment at Law was rendered, diligence on the part of the complainant, and that adequate relief cannot be had at Law.

In the judgment of this Court, all these grounds satisfactorily appear in this bill. Until the application by Sutton to Taylor, for indulgence, he was totally ignorant of the matters which he seeks to set up for his defence. Nor is negligence justly imputable to him. The whole face of this proceeding was calculated to mislead him. True, he saw on the face of the deed from Rose to Taylor, that if the purchase-money was not paid, the title should be void and the land revert to the vendor; but could he doubt but that Taylor, the feoffee, was the true owner? And from the length of time which had elapsed, ten years, and the pecuniary ability, as well as respectability of Taylor, the apparent vendee, he had every reason to suppose that it was paid. Nor is he to be held responsible for not applying, directly, to Taylor, for information in the first instance. He was the party plaintiff, and ostensibly pressing the suit; and the knowledge which he acquired was wholly accidental. If ever there was a case of surprise, this is one..

It is objected that Taylor's affidavit should have accompanied the bill. He may or may not have been willing to furnish it voluntarily—Mr. Sutton had no right to ask him to give it. Besides, Taylor being the lessor of the plaintiff, and a party to the record, as well as the grantee of the deed, his admissions are sufficient, and these are sworn to by Sutton.

[3.] Has the complainant full remedy at Law? It is contended that our Courts of Law will not grant new trials in ejectment. And this notion, which seems to be prevalent with the profession, is not without authority in some of the earlier cases. (2 Salk. 648.) And the reason assigned, is because

the verdict is not conclusive, so that the winner was always at the risk of another action being brought.

But this idea was pointedly repudiated by Lord *Mansfield*, as far back as 1768. In *Goodtitle vs. Clayton*, (4 *Burrows*, 2224, 2225,) he said, it had again and again been done. And he gave this very sensible reason for it, that while it was true, that the defendant was not estopped from renewing the action against the plaintiff, still he would be turned out of possession in the mean time, and thus sustain an injury as well as an inconvenience.

Here the defendant has lost, without fault on his part, the opportunity of obtaining a new trial at Law, inasmuch as he did not get a knowledge of the facts, in time to make his application to the Court, when the judgment was recovered.— Besides, the remedy at Law would not be as complete. There, he could only defend himself against the present suit, which could be renewed against him, until prevented by a bill of peace, whereas, by his bill, under the prayer for general relief, he would be entitled to a decree, provided the proof should warrant it, to have the deed itself delivered up to be cancelled; and thus be protected from future harrassment.

For these reasons, we hold that the Court was right in overruling the demurrer, and requiring the bill to be answered.

[4.] But it is further insisted, that even if Sutton could get all the discovery which he seeks, that it could not avail him, for that the condition in the deed is void, because repugnant to the fee therein conveyed. And that, consequently, the failure to pay the purchase-money, does not, in anywise, affect the validity of the title.

This proposition is too broad. It would defeat every conditional deed, and convert it into an absolute fee. In all such conveyances, the fee is first conveyed; and then follows the condition upon which the fee is either vested absolutely or defeated. All mortgages at Common Law are in this form.— First, the fee is granted, and then the condition annexed, that upon the payment of a certain sum, at a stipulated time, the title is to be void.

[5.] The conditions in deeds are various—I might almost say endless; some precedent—some subsequent. Subsequent conditions are not favored, because they serve to defeat estates. At one time Courts of Equity inclined against them, and decreed pecuniary compensation in lieu thereof. At a later day, abandoning this broad ground, they granted relief only against the condition, whenever the forfeiture was inevitable and pecuniary compensation could be made.

[6.] So, also, Courts of Equity have struggled to construe conditions subsequent into covenants, and send the party aggrieved to Law, to get his damages, for the non-performance.

[7.] Still, it may be assumed, broadly, that these conditions, whether they be on failure to pay a certain sum of money, or anything else, are good, whenever they are not impossible to be performed at the time, or made so afterwards, by the act of God, or of the grantor; when they are not contrary to law, nor repugnant to the deed itself. In all such cases—and this is not one of them—the conditions themselves are void, and the party takes an absolute estate at once.

[8.] We repeat, that the condition in this deed, from Rose to Taylor, for the payment of the purchase money, does not fall within any one of the foregoing exceptions. The grantee may have performed the condition—so far from its being illegal for him to do so, it was just and right that he should pay for the land, before his title vested, or that failing to do so, his title should be destroyed, and the premises revert to the grantor. Neither is the condition repugnant to the estate conveyed by the deed. There is no restraint upon alienation attempted, as was argued by counsel. On the contrary, Mr. Taylor being seized of this conditional estate, might have conveyed or devised the same, or transmitted by descent, the inheritance to his heirs, though the estate would continue defeasible, of course, until the condition be performed, or destroyed, or released, or barred by the Statute of Limitations, or by estoppel. (2 *Black. Com.* 156. *Preston on Abstracts of Title, Vol.* 11, 185.)

Our conclusion, therefore is, that the testimony, if obtained,

could be available on the new trial. And that, in every view of this case, the judgment of the Court below should be affirmed.