FREEMAN MOORE, Appellant, *v.* PAUL R. PITTS, Respondent.

Where an estate for life is subject to be divested by the breach of a condition subsequent, a breach which forfeits the estate destroys the lien thereon of a judgment against the tenant for life.

Plaintiff leased certain premises owned by him to H. for life. The lease contained the following clause: "The party of the second part (the lessee) covenants that he will use the premises as his residence, and that

he will not sell or assign this lease, or lease out or sublet said premises without the written consent of plaintiff," and then after other provisions as to payment of taxes, etc., by the lessee, the clause, "and if he (the lessee) fail in the conditions of this lease the said M. (plaintiff) shall be at liberty to forfeit the lease." No rent was reserved, and there was no consideration for the lease save the covenants of the lessee, who was the father-in-law of plaintiff. G. had a judgment against H. at the time of the execution of the lease; H. for the purpose of defrauding his creditors assigned the lease. In an action to recover possession defendant claimed title under a sale upon execution issued upon G.'s judgment. *Held*, that the "covenants," so called, were the contingencies or conditions intended by the parties upon which the right to forfeit the lease depended; that the transfer of the lease forfeited the estate and destroyed the lien of the judgment, and that therefore a direction of the court to the jury to find a verdict for defendant was error.

(*Allen* v. *Brown*, 5 Lans., 280, distinguished.)

(Argued May 21, 1873; decided June 3, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment for defendant upon a verdict.

This action was brought to recover possession of a house and lot in the city of Binghamton. Plaintiff claimed and gave evidence that he was the owner in fee of said premises. On the 20th of April, 1865, he executed to Harvey Hall a life lease of the premises, which lease contained among others the following provisions:

"The said party of the second part (the lessee) covenants that he will use said premises as his residence, and that he will not sell or assign this lease, or lease out or sublet said premises without the written consent of said Moore.

"This lease is not to take effect or be of any force whatever unless the said Hall shall move with his family on the premises, and vacate and surrender the house he now occupies to the owner thereof within three days' time.

"The party of the second part agrees to pay all assessments and taxes to be assessed on said premises during said term, and that he will take good care of the buildings and trees on said premises; that he will commit no waste thereon, and if

he fail in the conditions of this lease the said Moore shall be at liberty to forfeit the same."

This lease was signed by both parties. Hall was the father-in-law of plaintiff; he took possession of the premises and occupied till 1867. Before the execution of the lease, viz., on the 9th day of April, 1864, one Milton Gilman had obtained a judgment against Hall in the Supreme Court for $865.95. An execution on this judgment was issued to the sheriff of Broome county, June 2d, 1865, and Hall's interest in said premises sold on said execution and bid off by said Gilman, to whom, on the 7th day of January, 1867, a deed of the premises was given by the sheriff. On March 25th, 1868, said Gilman executed a lease of the premises to defendant from April 1st, 1868, to April 1st, 1869. Defendant went into possession of the premises before the said 1st of April, 1868, and was so in possession prior to and at the commencement of this action. On the 9th of May, 1865, Harvey Hall assigned the lease from Moore to Artemus Hall, his brother, with intent to defraud Gilman and other creditors. Other facts appear in the opinion.

The court directed a verdict for defendant, and exceptions were ordered to be heard at first instance at Special Term.

*Orlow W. Chapman* for the appellant. The lease from plaintiff to Hall conveyed no interest that could be sold on execution against Hall. (8 East, 185; 8 Barn. & Cres., 308; 1 Wash. on R. P., 350; 2 Cruise's Dig., 12, § 51; Taylor's Landlord and Tenant, §§ 403, 414.) The intent of the parties should be carried into effect and should be collected from the whole instrument. (1 R. S., 748, § 2; 32 Barb., 45, 381; 40 id., 134; 3 Duer, 554; 4 Kent, 132 [2d ed.]; 2 J. R., 148.) By the word "conditions," used in the clause of forfeiture, the parties meant that the forfeiture should depend upon the violation by the lessee of the stipulations which attached to the lease after it became operative. (See "Condition," Worcester's Dict.; Webster's Dict., 6th def.; 1 Tom. L. Dict., 378; Bur. L. D.) The popular and common meaning of words is

to be adopted in construing written instruments. (2 Comyn on Con., 531; Chitty on Con., 81.) Where language is capable of two significations it should be determined in that by which it will have some operation. (2 Cow., 290; 2 Comyn on Con., 533; Sedg. on Stat. and Con. Law, 290; 7 Cush., 89.) These stipulations should be deemed conditions. (2 J. R., 145; 4 Kent, 132; 8 Barn. & Cres., 308; 26 Barb., 290; 38 N. Y., 165; 41 id., 448; *Grant* v. *Johnson,* 5 id., 248, 255.) If by construing the stipulations as covenants the party is without adequate remedy, they should be deemed conditions. (26 Barb., 297, 298; 8 Cow., 296.) The lease is the act of the lessor and lessee, and a condition may be therein, though it sounds in covenant. (1 Nelson, 464; 1 Tom. L. Dict., 382; "Condition," II, ed. 1836.) Provisos for re-entry in case of non-performance of covenants in a lease, being matters of contract between the parties, should be construed like other contracts. (*Doe* v. *Elam,* Moody & Makin, 191; Add. on Con., 383.) By the provisions of the Revised Statutes the intention of the parties, as gathered from the whole instrument should be carried into effect without discriminating against the provisions for re-entry. (1 R. S., 748, § 2; 3 Duer, 554; 32 Barb., 45, 381; 40 id., 134.) The stipulations to which the clause of forfeiture attached were clearly violated. (38 N. Y., 169; 4 Kent, 26, 124; 26 Barb., 291; 2 Comst., 394; 6 Duer, 272; Taylor's L. and T., 217, 271.) The purchaser could take no more favorable interest in the lease than Hall. (25 Barb., 102; 4 Paige, 9; 2 Barb., 206; 2 Hill, 525; Taylor's L. and T., 280.) He would take his purchase charged with all conditions and restrictions, including Hall's residence on the premises. (8 East, 185; 2 H. Black., 133; 23 Wend., 509; 4 Kent, 26.) The sale of Hall's interest was a breach of the covenant not to sell. (8 East, 185; 2 Cruise's Dig., 12, § 51.) The enforcement of the grantor's right for condition broken avoids the estate *ab initio* and defeats all incumbrances. (4 Kent, 126; 13 N. Y., 190; 4 Paige, 14, 15.) No demand of possession or actual entry was necessary. (41 N. Y., 450.)

Opinion of the Court, per GROVER, J.

*Giles W. Hotchkiss* for the respondent. Gilman's judgment was a lien upon Hall's term. (3 R. S. [5th ed.], 637, § 4; Code, § 282; *Biglow* v. *Finch*, 17 Barb., 394.) Hall's interest in the demised premises was a chattel real. (Burr.'s Dict., 282; 2 id., 382; 2 Kent's Com., 382; 3 id., 401.) The assignment by Hall, being made to defraud creditors, was void against Gilman. (3 R. S. [5th ed.], 224, § 1.) The covenant not to assign without the landlord's license did not prevent Gilman from selling Hall's term under his judgment. (4 Kent's Com., 124; *Jackson* v. *Corlis*, 7 J. R., 531; *Jackson* v. *Silvernail*, 15 id., 278; *Jackson* v. *Kipp*, 3 Wend., 230.) There was no forfeiture of the lease. (*Allen* v. *Brown*, 5 Lans., 280; *Jackson* v. *Harrison*, 17 J. R., 66.) Conditions subsequent are construed strictly. (4 Kent's Com., 129; id., 132.) In construing covenants of this sort the courts lean against an interpretation which creates a forfeiture. (*Jackson* v. *Topping*, 1 Wend., 395.) To constitute a valid condition in a deed it must be in the words of the grantor, in the *habendum*, and must not rest in the covenant of the grantee. (*Gilbert* v. *Peteler*, 38 Barb., 504; 1 Saund., 387.)

GROVER, J. If the lease given by the plaintiff to Hall for the life of the latter was still in force, the direction of the judge to find a verdict for the defendant was correct, as that would establish conclusively that the plaintiff was not entitled to the possession of the premises described in the complaint. It was immaterial whether the right of possession was in the defendant or Gilman; so long as it was not in the plaintiff, he could not maintain the action. The plaintiff gave evidence tending to show that he was the owner in fee of the premises. The defendant gave in evidence a lease from the plaintiff of the premises to Harvey Hall for his life. The rights of the parties depend entirely upon the construction of this lease. Section 2, volume 1, 748, Revised Statutes, provides that in the construction of every instrument creating or authorizing the creation or conveyance of any estate

or interest in land, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law. This section was mainly declaratory of the common law, which required such a construction of all instruments as would effectuate the intention of the parties, so far as conformable to law; such intention to be ascertained from the entire instrument, read in the light of the extrinsic facts in reference to which the contract was made. The lease is dated April 20, 1865, and after describing the premises and declaring the terms, contains the following provisions: " And the party of the second part (the lessee) covenants that he will use the premises as his residence, and that he will not sell or assign this lease, nor lease out or sublet said premises without the written consent of said Moore. This lease is not to take effect or be of any force whatever, unless the said Hall shall move with his family upon these premises, and vacate and surrender the house and lot he now occupies to the owner thereof in three days from this time. The party of the second part agrees to pay all assessments and taxes to be assessed on said premises during said term, and that he will take good care of the buildings and trees on said premises, and that he will commit no waste therein, and if he fails in the conditions of this lease, the said Moore shall be at liberty to forfeit the lease." No rent was reserved, and there was no consideration for the lease except the covenants of the lessee above set forth. It appeared that Moore was the son-in-law of Hall, and the owner of the house then occupied by Hall. Hall assigned the lease to his brother without the consent of the plaintiff, with the intention of defrauding his creditors, and particularly Mr. Gilman, who had a judgment against him in the Supreme Court at the time of the execution of the lease, upon which the premises were afterward sold by the sheriff of Broome county, and conveyed to Gilman, under whom the defendant claimed title. This assignment of his lease by Hall was clearly a breach of his covenant, irrespective of his motive in making it, and

was a valid transfer as to him of all interest in the premises, although void as to his creditors. It follows that this assignment was a forfeiture of the term, at the election of the plaintiff, if any transfer of his estate in the premises by Hall without the consent of the plaintiff would produce that result.

It is insisted by the counsel for the defendant that the judgment of Gilman being a lien upon the premises, prior to the assignment by Hall, the lien could not be destroyed or affected by any act of Hall after it had attached. *Allen* v. *Brown* (5 Lansing, 280) is cited to sustain this position. In this case it was held that a lessee for lives having mortgaged his estate, could not as against the mortgagee terminate the lease by the subsequent commission of waste and surrendering his lease. This was so held, as appears from the case, for the reason that the fact that waste had been committed, and a forfeiture thereby incurred, had not been judicially determined, and that the rights of the mortgagee or of those claiming under him could not otherwise be cut off. Whether this be so or not, the point determined has no application to the present case. This action calls directly for a judicial determination whether a forfeiture has been incurred by the acts of Hall. It is obvious that the lien of Gilman's judgment could only attach to such estate as Hall had in the premises. If that estate was subject to be divested by the breach of any condition subsequent, any such breach that would divest the estate would of necessity destroy the lien. This brings us to the question, whether the stipulations of Hall to reside upon the premises and not to assign the lease, etc., are mere covenants or conditions subsequent, the violation of which works a forfeiture of the estate at the election of the plaintiff. The clause, " and if he fail in the conditions of this lease, the said Moore shall be at liberty to forfeit the lease," cannot refer to Hall's moving upon the premises with his family, and surrendering the house occupied by him in three days, for these acts are clearly conditions precedent to the vesting of any estate under the lease, it being expressly provided that, until performance by Hall, the lease is not to take effect or be of any force whatever. Until per-

formance, Hall had no interest in the premises under the lease. It was optional with Hall whether to perform or not, and none of his covenants or any of the provisions of the lease were obligatory upon either party until such performance. It would be absurd to provide for a forfeiture at the election of the plaintiff for a failure by Hall in this respect, as in such case the lease was already a nullity as to both parties. It follows that the right of the plaintiff, at his option, to forfeit the lease for a failure by Hall in the conditions of the lease, must relate to other conditions than those above referred to, otherwise this clause can have no operation whatever. In the construction of contracts that should be adopted, if practicable, which will give some effect to every part. This rule, like others, has been adopted and applied by the courts for the purpose of ascertaining the intention of the parties, and results from the presumption that words are not employed in making contracts without meaning something.

The counsel for the respondent insists that the word conditions in the clause under consideration was used in its legal sense only, that is, as including only contingencies upon the happening of which the estate was to vest or divest. In this the counsel is correct, but this does not determine the question involved. It still remains to be determined what these contingencies were, and if these are manifested from the language of the entire instrument, read in the light of the extrinsic facts, such contingencies constitute the conditions upon which the plaintiff was at liberty to forfeit the lease, irrespective of the name given to them by the parties. Although the consideration of the lease is stated to be the rents and covenants thereafter expressed, yet no rent was reserved, and the covenants of Hall were the only consideration of the lease; among these was one by Hall to use the premises as his residence, not to sell, assign or sublet without the consent of the lessor, to pay the taxes and assessments, to take care of the buildings and trees. These are all the substantial covenants in the lease, and clearly showed that the intention of the parties was to furnish a home

for Hall, the father-in-law of the plaintiff, for life, and to put it out of the power of Hall, without the consent of the plaintiff, to have the premises devoted to any other use. To effect this intention, the clause providing for a forfeiture at the election of the plaintiff was inserted in the lease. From the entire instrument and the extrinsic facts, considered in connection with the further fact that unless these covenants were the contingencies upon which the right to forfeit the lease depended, there are no such contingencies whatever, it is clear that these, although called covenants, were the contingencies or conditions intended by the parties.

It follows that the direction of the judge to the jury to find a verdict for the defendant was erroneous, and the judgment of the General Term for the defendant thereon must be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.