No. 14,243.

C. A. Burnham et al. vs. Police Jury of Claiborne Parish.

### Syllabus.

1. The boundary line of a taxing district is designated with sufficient certainty by the following language : " Starting from the northeast corner of the northeast quarter of the southeast quarter of section 18, and running thence three miles west on the section line to the northwest corner of the northwest quarter of the southwest quarter of section 14." The *termini* and the direction of the line are unmistakable. The phrase, " on the section line," is shown by the context to have the meaning of parallel with the section line.

2. In considering the question of whether compliance with Section 11 of Act 81 of 1888 requiring school boards to divide their parishes into school districts, was sufficiently formal, regard must be had to the connection in which the question is mooted, whether in connection with the mere distribution of school funds, or in connection with the exercise of the taxing

power, a much less strict compliance being sufficient in the former than in the latter case.

3. Residents of a school district who do not show that their own children are incommoded, or that their taxes are increased, by the manner in which the boundaries of a school district have been fixed, are without interest and therefore without right to resist a tax levied in the district, on the ground that the boundaries have not been so fixed as to accommodate the children of the parish.

APPEAL from the Third Judicial District, Parish of Claiborne.— *Edwards, J.*

*Richardson & Richardson,* for Plaintiffs, Appellants.

*McClendon & Seals,* and *James Edward Moore,* for Defendant, Appellee.

The opinion of the court was delivered by

PROVOSTY, J.   The School Board of the Parish of Claiborne having created a school district known as the Haynesville School District No. 11, and a tax having been voted in said district for the use of the school therein, the plaintiffs, who are resident taxpayers of the district, bring this suit to have said tax decreed null and void.

The only grounds pressed upon our attention are, first, that the School Board was without power to create said district until the entire parish had precedently been divided into districts, and that this division of the entire parish has never taken place; second, that the north boundary of the district is not fixed with sufficient precision; and, third, that this school district was not so formed as best to accommodate the children of the parish.

The first ground is sought to be sustained under Section 11 of Act 81 of 1888, which reads, as follows:

"Sec. 11.   That it shall be the duty of the Parish Board, with the Parish Superintendent, to divide the parish into school districts of such proper and convenient area and shape as will best accommodate the children of the parish.  The Parish Board shall, as soon as practicable, proceed to the work imposed upon them, and upon completing this work, they shall make a report to the Parish Superintendent, which report shall contain the boundary and description of the said district designated by number.   The Parish Superintendent shall record the same in a well bound book, kept by him for the purpose,

which book shall be held by said Parish Superintendent and be at all times open to inspection. The Parish Board, if they deem it to the best interest of the schools, may divide the parish into districts without reference to the wards in the parish."

It seems that the nearest the School Board of Claiborne Parish came to complying with this law was to pass a resolution each year locating the schools by wards, and directing the Superintendent to apportion the school fund among the wards. In answering the question whether this was a sufficient compliance with the act, regard must be had to the connection in which the question is mooted: if merely in connection with the distribution of the school fund of the parish, required by Section 7 of the same Act to be apportioned among the several districts, we should say it was a sufficient, though an extremely informal and slipshod compliance; but if in connection with the creation of school districts for the purpose of taxation, we should say emphatically that it was not a sufficient compliance. Had the School Board of Claiborne Parish taken no further action than the above for the purpose of creating the district wherein has been imposed the tax resisted in this case, we should unhesitatingly have said that the district had not been created in a manner sufficiently formal to meet the requirements of the legal situation. Except in connection with and for the purpose of a distribution of funds this general division of the parish is not required and if the proceeding for the creation of the particular taxing district in question are sufficiently formal, we do not see what ground there can be for complaint.

The regularity of the proceedings for the creation of the school district in question, is not denied by plaintiffs, except in the two respects already pointed out, namely, that the entire parish was not divided, and that the north boundary of the district was not designated with sufficient precision or certainty.

The northern boundary is, we think, designated with sufficient certainty. It is said to start from the northeast corner of the northeast quarter of the southeast quarter of section 18, and to run "thence three miles west *on section line* to the northwest corner of the northwest quarter of the southwest quarter of section 14." Were the words, "on section line" left out of this description, the same would be as precisely accurate as language could make it; but it is said that the presence of these words renders the designation of the line uncertain, as it is not possible for the line to run from the one to the other of the

points fixed for its *termini*, and yet run on the section line; that it would have to run on the quarter section line. So evident is this that the words "on the section line," can impart no ambiguity to the other descriptive words made use of. The proposition "on" has an almost inexhaustible variety of meanings. One is, "conforming to or agreeing with; as, on the line." (Cent. Dict., Vo. On, 3, b.) Hence the proposition may be used to express relative, as well as absolute position, and we think that the context sufficiently indicates that in this case it is used to express mere relative position so that the meaning is that the line shall run *parallel* with the section line. To give it the other meaning would create not ambiguity only, but contradiction. It is not to be supposed that the Police Jury intended that the line should occupy two positions.

The learned judge *a quo* properly ruled out all evidence on the question as to whether the boundaries of the district had been so fixed as to accommodate the greatest number of children. Plaintiffs, who are residents of the district, have no interest in urging the complaint; by this alleged improper fixing of boundaries their own children are not incommoded, and their taxes are not increased. It will be time enough to consider the question when the parents or guardians of the excluded children complain. Though, we surmise, it will then probably be found that the matter of fixing the limits of school districts has been confided by the statute to the School Boards, and that the discretion thus confided cannot be controlled by the courts.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be affirmed at the costs of the appellants.