## C. L. HINTON ET AL. v. J. A. VINSON.

(Filed 24 November, 1920.)

1. **Trials—Issues—Pleadings—Appeal and Error—Objections and Exceptions.**

   It is reversible error for the trial judge to submit an issue to the jury not raised by the pleadings, over the objection of a party, when both parties insist upon the submission only of the issue they have raised; as where the issue is as to whether the defendant had breached a condition subsequent in a conveyance of lumber growing upon the plaintiff's land by cutting or sawing timber near his fish pond, and thereby destroying the fish by the sawdust therefrom, and the issue submitted relates to a different cause created by statute applicable to the county alone, and not stated in the pleadings.

2. **Estates—Conditions Precedent—Timber Deeds—Deeds and Conveyances.**

   The law does not favor the construction of a lease as creating a condition, the nonperformance of which will avoid the entire contract, and the language employed will not be strictly construed, but the court will hold it to be merely a covenant unless the intention of the parties clearly appears to be otherwise from the written instrument, taken in connection with the situation of the parties, their relation to the subject of the transaction and the object in view. And the omission of a clause providing for reëntry of the grantor for condition broken, or declaring the deed void, or some equivalent words, will be considered by the court as the usual indication of an intent to create a covenant.

3. **Same—Covenants.**

   An agreement in a deed limiting the use of the premises is a covenant, and not a condition, and its violation of it will not work a forfeiture of the estate granted.

4. **Same—Damages—Equity—Specific Performance.**

   Where the language of a conveyance permits it, under a proper interpretation, the expression of a condition therein will be construed as a covenant, for a breach of which an action for damages will lie, and in proper instances an order of court may be obtained to compel its performance.

5. **Estates—Deeds and Conveyances—Conditions Precedent—Contract—Breach—Avoidance—Equity.**

   Where, in accordance with the expression of a conveyance of standing timber, the party of the second part accepts it "with condition that he, his heirs and assigns, will erect no mill on the streams leading into the fish pond on said land which, with thirty acres adjoining the same, has been leased to L. and others for fishing," etc., and there is no language used therein evidencing the intent that the word "condition" should be construed to be other than a covenant, it will be so interpreted, especially when to declare a forfeiture would cause a loss to the defendant of a sum altogether inequitable, and greatly disproportionate to the benefits he would otherwise receive.

**6. Deeds and Conveyances—Ponds—Streams—Words and Phrases—"On"—Fishing—Sawdust.**

Where a deed to timber standing on lands is accepted "on condition" that the grantee "will not erect a mill on a stream leading into a fish pond," etc., which, with a certain number of acres of land, the grantor had leased to another, the meaning of the words "on a stream" is not confined to the margin of the stream or the water's edge, but will be construed as within such proximity as to cause injury to the fish or fishing from the sawdust of the mill, and thereby impair the value of the fish pond.

APPEAL by both parties from *Guion, J.,* at October Term, 1919, of WAKE.

The Hintons and Mr. and Mrs. Watson, owners of the land described in their deed, conveyed the timber thereon of a certain kind and size to John Vinson on 23 April, 1907, the same to be cut within eight years from date. There were other provisions in the deed, which may be omitted as not being material. The deed contained this clause: "And the party of the second part accepts this deed with the condition that he, his heirs and assigns, will erect no mill on the streams leading into the fish pond on said land, which, with thirty acres adjoining the same, has been leased to E. H. Lee and others for fishing and hunting, and that he, his heirs and assigns, will not run any road, tramroad or railroads through any growing crop or crops without making full compensation therefor." Plaintiff alleged that in violation of the said provision as to locating a mill set out in paragraph three, the defendant did locate a sawmill on one of the streams leading into the said pond, and did permit large quantities of sawdust and shavings to be piled up at said location within forty feet of said stream, and did clear up land for stacking lumber, and made roadbeds around it. On account of the location of the sawmill on the stream the sawdust has been washed down into the stream and thence into the pond, in large quantities, and on account of the fact of the sawdust, and turpentine therefrom permeating the water of the pond and on account of mud being washed down into the pond from the said clearing and roads, the pond has been seriously and permanently damaged for fishing purposes. The pond was one of the best stocked fish ponds in this section, and before the sawdust contaminated the same, fishing was excellent; but since the piling· of sawdust, which washed down into the pond, fishing there has been practically ruined. Plaintiffs are informed and believe, and so allege, that the location of the sawmill on the stream, in violation of said provision of the contract, forfeits all rights of the defendant in and to the said contract and his rights to the timber conveyed therein, whether previously cut by him or now standing. There was on said land over five million feet of merchantable timber, the value of which is now $30,000. The plaintiffs,

after discovering that the mill was located on said stream, notified the defendant that his rights were forfeited under the contract, and demanded that he desist from further cutting of the said timber; but the said defendant has disregarded said demand, and has continued to cut and remove the said timber. Plaintiff prayed for judgment declaring that the condition had been broken, and that the contract and all of defendant's rights thereunder had been forfeited, and that plaintiff recover of the defendant the value of all the timber cut from the land, which is $30;000, and $5,000 additional for damages to the fish pond, and that defendant be enjoined from entering upon the land and from cutting timber thereon. The defendant in his answer denied the allegations of the complaint. The court submitted the issues to the jury, to which defendant objected, and which, with the answers thereto, are as follows:

"1. Did defendant, in locating his sawdust pile near the stream emptying into the plaintiff's millpond suffer and permit sawdust and turpentine and seepage therefrom to be washed into said stream, and emptied into said branch, seriously and permanently injuring said pond, as alleged in the complaint? Answer: 'Yes.'

"2. If so, what damages has plaintiff sustained by reason thereof? Answer: '$1.' "

A motion by defendant for a nonsuit was refused, and he excepted. Judgment on the verdict, and both parties appealed.

*R. N. Simms and S. Brown Shepherd for plaintiff.*
*Douglass & Douglass, J. H. Pou, and Murray Allen for defendant.*

WALKER, J., after stating the case: When we consider the real question in this case its decision becomes a simple one. We are not, by this record, called upon to decide whether the clause of the deed quoted in our statement of the case is a condition, or merely a covenant, for the complaint only declared upon it as strictly a condition, whereas the court submitted issues, not according to the allegation of the complaint, and the denial of the answer, but substantially and essentially departed from the only issue the parties themselves had made, and submitted an issue as to whether the defendant had violated a local statute, applicable to Wake County alone, which prohibited any person, firm, or corporation from dumping sawdust in or near any stream in that county, declaring the doing of the forbidden act a misdemeanor, punishable by fine or imprisonment (Public-Local Laws of 1915, sec. 1). The defendant duly excepted to this ruling of the court, though the plaintiff did not formally, but insisted that the court should confine the case to the breach of the clause in the deed, treating it as one of condition and not

of covenant, and that upon the finding of the jury that there had been a breach, the court should declare that defendant had forfeited the contract, and all his rights and interests thereunder, and for the breach, that plaintiff should recover of him the sum of $35,000. It was error in the judge to submit an issue not raised by the pleadings, and against the objections of the defendant, as well as the apparent opposition of the plaintiff, and because of this material error there must be a new trial.

But it may be well to consider whether the stipulation of the deed is a condition or a mere covenant of the defendant not to do the forbidden act, implying a promise on his part to pay damages if he broke the covenant. This question fairly arises in the case, and will have to be determined at the next trial. It should be settled now to prevent further litigation and delay. The language of the deed is, that "the party of the second part accepts this deed with the condition that he, his heirs and assigns will erect no mill on the streams leading into the millpond," etc. There is no clause of forfeiture or reëntry, or any words declaring the deed void if the condition is broken. If this should be construed as a condition at all, it is not one precedent, but subsequent, which is strictly construed, for the law always leans against forfeiture. *Chancellor Kent* said that "conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates, and the rigid execution of them is a species *summum jus,* and, in many cases, hardly reconcilable with conscience." 4 Kent's Comm. (12 ed.), star pages 129 and 130, citing Coke's Litt., 205-b, 219-b; 2 Bl. Comm., 156; *Mitchell v. Reynolds,* 1 P. Wms., 189; *Cary v. Bertie,* 2 Vern., 339; *Martin v. Ballon,* 13 Barb., 119, and other cases. He also says that if it be doubtful whether a clause in a deed is a condition or covenant, the courts will incline against the former construction, for a covenant is far preferable to the tenant. Kent's Comm. (13 ed.), star page 132. A clause in a deed will be construed as a covenant, unless apt words of condition are used, and even then it will not be held to create a condition unless it is apparent from the whole instrument and the circumstances that a strict condition was intended. Jones on Conveyances, p. 534, sec. 646. In deciding whether the language of the deed creates a condition or is merely to be regarded as a covenant, the omission of a clause providing for reëntry of the grantor for condition broken or declaring the deed void, or some equivalent words, is to be considered by the court, for some such expression is the usual indication of an intent to create a condition subsequent. *Gallam v. Herbert,* 117 Ill., 160. And *Chief Justice Bigelow,* in *Ayers v. Emery,* 14 Allen (96 Mass.), 67, held it to be perfectly well settled that a stipulation in a deed will not be construed as a condition, except when the terms of the grant will admit of

no other reasonable interpretation. The same doctrine was approved in *Stoddard v. Wells,* 120 Mo., 25. The law favors the early and absolute vesting of estates and leans favorably towards the idea of a covenant rather than one of condition. *Allen v. Allen,* 121 N. C., 328. This question is fully discussed in *Helms v. Helms,* 135 N. C., 164, and *Brittain v. Taylor,* 168 N. C., 271. In the last case it was said that, if something is required by the deed to be done, such as services to be performed, rent to be paid, or divers other undertakings by the grantee, and there be added a clause of reëntry or, without such clause, if it is declared that, if the *feofee* does or does not do the acts forbidden or required of him to be done, "his estate shall cease or be void," it creates a good condition subsequent, citing Washburn on Real Property (5 ed.), pp. 4 and 5; Sheppard's Touchstone, 125; *Moore v. Pitts,* 53 N. Y., 85; *Schulenburg v. Hairman,* 21 Wall. (U. S.), 144; *Jackson v. Crysler,* 1 Johns. Cases (N. Y.), 125. "Conditions subsequent, especially when relied on to work a forfeiture, must be created by express terms, or clear implication, and are construed strictly." 2 Washburn on Real Property (5 ed.), pp. 7 and 8, paragraph 5, and cases in note. An estate on condition expressed in the grant or devise itself is where the estate granted has a qualification annexed, whereby it shall commence, be enlarged, or defeated upon performance or breach of such qualification or condition, and estates on condition subsequent are defeasible, if the condition be not performed. 2 Blackstone Comm., 154; Co. Litt., 201. The words which constitute a condition may be various, for in particular words there is no weight, as their operation and effect depend on the sense which they carry. 1 Ves., 147; *Wheeler v. Walker,* 2 Conn., 196. See *Brittain v. Taylor, supra; Harwood v. Shoe,* 141 N. C., 161. But in our case there is no language providing for a defeasance or forfeiture or reëntry, but simply the words "with the condition," which may just as well mean "with the promise, or covenant, or undertaking" that he will not erect a mill at the place designated. Where a deed provided that the land conveyed shall not be used for a certain designated purpose, it was held by this Court that the clause should not be construed as a condition subsequent, but rather as a covenant or a restrictive clause, observance of which may be compelled by a court of equity. While conditions subsequent may be created without the use of technical words, they must be clearly expressed, as they are not favored in law, and, if it is doubtful whether a clause is a covenant or a condition, the Courts will so construe it, if possible, as to avoid a forfeiture. *St. Peter's Church v. Bragaw,* 144 N. C., 126, citing *Graves v. Deterling,* 120 N. Y., at p. 455; *Woodruff v. Woodruff,* 44 N. J. Eq., 349. But we think the case of *R. R. v. Carpenter,* 165 N. C., 465, is directly in point. There the restriction was as follows: "*Provided* said railway company locates

or causes to be located within twelve months from this date, or within three months after it begins to operate, trains over said strip or track, a sidetrack, flag station, or other convenience given other mill companies, at some suitable point on said manufacturing company's lands." With respect to this clause of the deed, it being contended by the defendant that it created a condition, and by the plaintiff that it was merely a covenant, this Court, by *Justice Brown,* said: "We do not agree with the defendants that the proviso in the descriptive part of the deed is a condition subsequent, a failure to perform which devests the plaintiff's title and revests it in the defendant. We must interpret the deed as a whole, and endeavor to ascertain the true intent of the parties. *Gudger v. White,* 141 N. C., 508. The extent of the rights acquired must, therefore, depend upon the construction placed upon the terms of the grant, and in construing such instruments the Court will look to the circumstances attending the transaction, the situation of the parties, and the State of the thing granted, to ascertain the intention of the parties. In cases of doubt, the grant must be taken most strongly against the grantor. Conditions subsequent working a forfeiture of the estate conveyed should be strictly construed, as such conditions are not favored in law, and are to be taken most strongly against the grantor to prevent forfeiture. 14 Cyc., 1201. Courts in such cases will look to the good sense and sound equity—to the object and spirit—of the contract. Courts of equity will not aid in divesting an estate for a breach of a covenant—a contract—when a just compensation can be made in money or other valuable thing, but will relieve against forfeitures claimed by strict construction of any common-law rule." And particularly to the same effect is the rule stated in Thompson on Titles of Real Property, sec. 277, as follows: Restrictions upon the use and enjoyment of the land conveyed are generally regarded as covenants, and not conditions. But if there is doubt whether a provision is a restrictive covenant or a condition, it will be held to be the former. A restriction may, of course, if such be the intention of the parties, be so expressed as to make it a condition; but where the restriction is a covenant and not a condition, its breach occasions no forfeiture. Whether or not the recitals in a deed create an estate upon condition or constitute a mere covenant must be ascertained from the language employed, the situation of the parties, their relation to the subject of the transaction, and the object in view.

An agreement in the deed limiting the use of the premises is a covenant, not a condition, and its violation will not work a forfeiture of the estate granted. *Graves v. Deterling,* 3 N. Y. St., 128. A construction holding the language of a deed to create a condition subsequent is not favored, and will not be adopted where it will admit of any other reasonable interpretation. 18 Corpus Juris, 355. The absence or presence of

a clause of reverter or reëntry has a most important, although not controlling influence in determining whether the language in the deed should be construed as a covenant or a condition, 18 Corpus Juris, 359.  Courts are inclined to construe clauses in a deed as covenants rather than conditions when the language employed is capable of its construction as a covenant.  In all cases of doubt whether a clause is intended as a condition or covenant, the doubt should be resolved in favor of holding the clause to be a covenant and not a condition.  2 Delvin on Deeds, sec. 970-b.  Where the clause is a covenant, the legal responsibility for its violation is liability to respond in damages, while a breach of a condition forfeits the title, 2 Delvin on Deeds, sec. 970.  These authorities will lead us to a correct conclusion, if we consider the facts and circumstances of the case at bar in the light of what they hold.  According to the plaintiffs' own contention, and their demand for damages, should we adjudge that the clause in question created a strict condition with the right of reëntry for a breach thereof, the estate granted would not only be devested, but they would recover of the defendant $35,000 for timber cut and removed, and other alleged damages, and, of course, the land itself, which recovery would be enormous in amount, and so vastly out of proportion to what, in good conscience, they should receive or to what would be a perfectly adequate compensation, that the law will not hesitate, in view of the language of the parties, as it appears in the deed, to deny any such relief, and to hold, on the contrary, that the clause of the deed creates a covenant rather than a strict condition subsequent, such as would forfeit the land to the plaintiffs, and also mulct the defendant in such heavy damages.  It is a breach, if breach at all, which can be fairly and adequately atoned for, if we award such damages, as will be a full satisfaction to the plaintiffs for the alleged wrong, and this consideration, coupled with the fact that there is no clause of reverter and reëntry, or other equivalent expression, in the deed, has great weight with the Court in holding it to be a covenant and not a condition.  If the language of the Carpenter deed was insufficient to create a condition, but the clause in that deed must be construed as containing words of covenant only, we are forced to concede, and to hold, that the proviso in the deed of the Hintons to Vinson does no more.

But it is useless to pursue this discussion, for when the meaning of an instrument—will, deed, or contract—is perfectly clear, there is left no room for construction.  We enforce it as it is plainly written, and that is the case here, as the clause itself makes the meaning manifest.  The words are that "he will not erect a mill on a stream leading into the fish pond, nor will he run any road, tramroad, or railroad through any growing crop, or crops, without making full compensation therefor."  This expressly stipulates that the only remedy for a breach shall be the recovery of damages.

But there is one other question of very material importance which will surely arise at the next trial of the case. One of the stipulations in the deed is that Vinson "will erect no mill on the streams leading into the fish pond," which, with thirty acres of the land, had been leased to E. H. Lee and others. The words "on the streams," in that clause, does not mean necessarily at the margin of the streams, or the waters' edge, and is not to be taken literally. The preposition "on" has, it has been said, an inexhaustible variety of meanings; it may signify near to and along or parallel with a certain line or border of something else. *Burnham v. Police Jury of Claiborne Parish,* 107 La., 513. Where a deed, which described certain land as lying "on the Louisville and Nashville Railroad," without giving the description of it by boundaries, was attacked as bad for misdescription, and the proof showed that the land was near to, but not bordering upon the road, it was held that the word "on," as denoting contiguity or neighborhood, may mean as well "near to," as "at"; and in this sense the land was not misdescribed. *Burnham v. Banks,* 45 Mo., 349.

The case of *Card v. McCabel,* 69 Ill., 314, closely resembles this one, as there it was held that where all parties, described as "resident upon the line of a canal," should be allowed to cut and remove ice from the same, any person living so near the canal as to desire the enjoyment of the privilege thus given, will be deemed as resident thereon, within the meaning which the law attaches to the word "on" or "upon." And the same Court has said that it is common usage to speak of the boundary of a State or county as a river, though the legal boundary may be the middle of the river; and particularly when anything is to be constructed on such a boundary, which from its nature must be constructed on dry land, would no one understand the place of construction as any other than the shore of the river, and that is perfectly legitimate and in accordance with everyday usage to say that a house built in Illinois on the eastern shore of the Mississippi stands on the western boundary of the State, though the legal boundary of the State is the mid-channel of the river, and in common understanding, therefore, a point on the western boundary of Iowa would be a point in Iowa on the eastern shore of the Missouri, precisely as a point on the eastern boundary of Nebraska would be understood to be in Nebraska, on the western shore of the river, and therefore the words "on the boundary of Iowa" are not technical words; and are to be taken as having been used by Congress in their ordinary signification. *Union Pac. R. Co. v. Hall,* 91 U. S., 343, at p. 347. The expression "on the line of" is defined in 29 Cyc., 1493, as "along, or parallel to; the general direction of; near the line of; but not necessarily touching or bounded by." See, also, *Coffin v. Left Hand Ditch Co.,* 6 Colo., 443; 29 Cyc., 375; *U. S. v. Bushington and Mo. R.*

*Co.,* 4 Dillon, 297 (*S. c.,* 24 Federal Cases, No. 14, 688). The words "on," "near," "at," and "along" are of relative meaning, and the precise import of these words, when used as descriptive of a place or location, can be determined by surrounding facts and circumstances. 29 Cyc., 375, and note 12. The object in the minds of the parties to be accomplished by the insertion of the phrase in this deed was to prevent the destruction, or any impairment of the fish pond, by filling it up with sawdust from the mill, as it may be thrown or washed into the stream, and also to guard against the contamination of its waters so that fish could not live in it. The words "on the streams" meant, therefore, at the margin of the water or so near thereto as to cause the injuries intended to be avoided.

As the issue, which was foreign to the pleadings, and a clear departure therefrom, was submitted by the court without the request, or assent of the parties, the judge should order a repleader, so that the plaintiff may sue upon the clause as one of covenant, and the defendant may proceed, on his side, as he may be advised, with the right, of course, to amend his answer, or to withdraw it, and plead anew. An issue, or issues, corresponding with the pleadings will be submitted to the jury and the plaintiff can then recover damages if they have sustained any.

There must be another jury called, because of the error in the court's ruling.

The costs of this Court will be divided equally between the parties, plaintiffs and defendant.

New trial.

BROWN, J., concurring: I concur in the judgment of the Court ordering a new trial and a repleader in this case, but I differ from my brethren in the view that they take of the instrument under consideration. The language used in the timber deed is as follows: "And said party of the second part accepts this deed with the condition that he, his heirs and assigns, will erect no mill on the streams leading into the fish pond on said land, which, with thirty acres adjoining the same, had been leased to E. H. Lee and others for fishing and hunting."

I am of opinion that the language used shows clearly that a condition subsequent was annexed to the grant at the time of its execution, forfeiture of which entitled the plaintiffs to a restoration of the property granted and for damages for such of it as has been destroyed since the breach of the condition. The language contained in the deed is peculiarly clear and expressive, and leaves no doubt in my mind as to the intent of the parties. The grantee is made to accept the deed upon the condition and terms embodied in the grant.

26—180

It is well settled that the intention of the parties to the instrument is to govern, and that such intention is to be gathered from a reasonable and natural interpretation of the words used. The parties to this instrument have not used the words ordinarily employed to express a covenant or an agreement to do or not to do a particular thing. They have used the only words in the English language that will express their meaning without resort to the context. They have said that the timber is granted "with condition," and the grantee, upon the face of the deed, is made to accept the deed with the condition expressed. There is nothing in this condition that is unreasonable or contrary to the policy of the law. There is no reason for misinterpreting this language or perverting its real meaning. The words are such that they speak for themselves. In such case the manifest intention of the party is always given effect. 8 R. C. L., III.

The owners of this property had a right to impose such conditions as they saw fit when they conveyed it.

It is well settled that owners of land may annex any condition to a conveyance of it as he sees fit, provided it is not against public policy. *Cowell v. Springs,* 100 U. S., 55; *Plumber v. Tuggs,* 41 N. Y., 442.

In *R. R. Co. v. Singer,* 49 Minn., 301, the language creating the condition is very similar to the language employed in this instrument. In that case it appears on the face of the instrument that it was accepted on condition that intoxicating liquors should not be sold on the premises. The Court held that the words created a condition subsequent, a breach of which forfeited the estate.

In *Firth v. Morovich,* 116 Pac., 729, the Court upheld a forfeiture on account of breach of building requirements.

*Thomas v. Record,* 47 Me., 500. A forfeiture was held in case of failure to support.

In *Sperry v. Pond* (Ohio), 24 Am. Dec., forfeiture was had for failure to maintain a grist mill.

*Taylor v. Sutton,* 15 Ga., 103, holds that any reasonable condition is good as a condition when not against public policy.

There are many cases upholding forfeiture for conditions broken as to maintaining liquor place. *Cowell v. Colonnade Springs Co.,* 100 U. S., 61.

I differ with my learned brother as to his construction of the case of *R. R. v. Carpenter,* 165 N. C., 465. That was a grant of leave to the railroad company for purpose of building railroad tracks and other structures incident to the operation of a railroad. The word *condition* is not used in the deed, and it is not specified that the grantee "accepts the deed upon condition." The language used is that the conveyance is made upon consideration. There is a proviso in the deed as follows;

"*Provided* said railroad locates or causes to be located within 12 months from this date—a sidetrack, flag station, and other conveniences given other mill companies at some suitable point on said manufacturing company's lands." This proviso, it was contended, was a condition subsequent, and that the failure to locate the station within the 12 months forfeited the grant. The Court held that the failure to locate the grant within the 12 months did not forfeit the estate granted.

A perusal of that case will show that taking the deed as a whole, there is no intention to create a forfeiture, as I think is clearly manifested in the deed from the plaintiffs in this case to the defendant.

I do not think it is necessary that the common-law ceremony of a re-entry should be performed, as a condition precedent to the prosecution of this action, whatever necessity there may have anciently been for such a proceeding, the reason for it ceased with the disappearance of the fictions and devices resorted to to maintain the old action of ejectment. *Plumb v. Tuggs, supra; Cornelius v. Ivins,* 26 N. J. Law, 376; *Ruch v. Rock Island,* 97 U. S., 693; *Brittain v. Taylor,* 168 N. C., 275. In the latter case the condition expressed in the deed was decided to be a condition subsequent, and the Court based its decision upon the fact that the intention of the parties was plainly expressed in the instrument itself.

In the case at bar I fail to see what apter words could be used to express the intention of the parties than those which they have employed.

The Chief Justice concurs in this opinion.